# Richmond

## BILL F. BERRY v. RALPH J. HAMMAN.

June 11, 1962.

Record No. 5430.

Present, All the Justices.

*Richard L. Williams* (*Richard S. Wright, Jr.; Battle, Neal, Harris, Minor & Williams*, on brief), for the plaintiff in error.

*J. Frederick Larrick*, for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

The plaintiff, Ralph J. Hamman, a special police officer of the town of Strasburg, Virginia, brought this action against the defendant,

Bill F. Berry, a member of the Virginia State Police force, to recover damages for bodily injuries suffered as a result of the alleged negligent firing of a gun by Berry while the parties hereto and the chief of police of the town of Strasburg were attempting to apprehend a person wanted for having committed several felonies. There was a jury trial which resulted in a verdict for Hamman in the amount of $7,154.87, upon which the trial court entered judgment, and Berry is here on a writ of error.

Berry contends that the court erred (1) in overruling his special plea setting up the defense that the provisions of the Workmen's Compensation Act bar Hamman from maintaining this common law action; (2) in not sustaining his motions to strike Hamman's evidence at the conclusion of his testimony and at the conclusion of all the evidence on the grounds that no actionable negligence had been shown; and (3) in not holding that Hamman was guilty of contributory negligence as a matter of law.

The undisputed evidence shows that during the early morning hours of September 10, 1957, the chief of police of the town of Strasburg requested Berry to assist him and Hamman to apprehend one Dickie Ritenour, who was charged with several felonies, and it was believed that he was spending the night in a certain home located in the town. Ritenour had a long criminal record and they expected him to be armed and likely to resist arrest. It was agreed upon by the chief of police and Berry that the chief, accompanied by Hamman, would knock on the front door of the house while Berry was to be stationed at the rear of the house. The officers anticipated that Ritenour, upon hearing the knock, would leave by the back door.

Shortly after the chief's knock on the door Ritenour emerged from the house by the back door with a gun in his hand, and Berry called on him to halt. Ritenour answered by putting the gun to his shoulder, and Berry immediately fired at him but missed his mark. Berry heard a click from Ritenour's gun but he was unable to say whether it was actually fired. Berry pursued Ritenour, and upon seeing a man on the sidewalk in front of the house whom he believed to be the felon, fired at him. It developed that the man fired upon was Hamman, and a pellet struck him in his arm.

The injury to Hamman occurred around 4:20 A. M. and it was dark and foggy. Berry and the chief of police were dressed in their uniforms but Hamman had on civilian clothes. All three of the officers were armed.

Ritenour escaped that morning but gave himself up later on in the

day. Three days later a gun was recovered from a creek in which Ritenour said he had thrown it two or three days before.

The only conflict in the evidence, which was settled by the jury, dealt with Hamman's position and whether there was a warning before he was shot. By their verdict the jury found that Hamman was standing on the sidewalk and not running when he was shot; that Berry did not cry out, "Halt, Ritenour," before firing; and that Hamman had his hand in his pocket holding his gun instead of the gun being out in the open where the silhouette of it could be seen by Berry.

Since we are of opinion that the trial court should have sustained the motion to strike all the testimony at the conclusion of all the evidence and entered judgment for the defendant, it is not necessary that we consider the first and third questions raised on this appeal.

One acting under the stress of an emergency is to be judged for negligence with a different measure from that used in weighing acts done under normal circumstances and conditions. To constitute negligence under the "sudden emergency" doctrine it must be such that it cannot be said that a reasonably prudent person, under the same circumstances and conditions, might have acted in the same manner. *Jones* v. *Hanbury*, 158 Va. 842, 860, 861, 164 S. E. 545, 551; *Otey* v. *Blessing*, 170 Va. 542, 552, 197 S. E. 409, 413. See also *United States* v. *Jasper*, 4 Cir., 222 F. 2d 632.

Generally a public officer may be held personally liable for damages resulting from negligent acts in the performance of a ministerial duty. *Wynn* v. *Gandy*, 170 Va. 590, 595, 197 S. E. 527, 529; 47 Am. Jur., Sheriffs, Police and Constables, § 42, p. 851; 67 C. J. S., Officers, § 125, pp. 417-419, and § 127b, pp. 422, 423; Annotation, 60 A. L. R. 2d 873, 879-890. But there is authority holding that a police officer, confronted with a sudden emergency when a felon attempts to escape or endangers the life of an officer or other person, may not be held liable for negligence when a bullet goes astray and strikes a third person. *Dyson* v. *Schmidt*, 260 Minn. 129, 109 N. W. 2d 262, 268; *Scott* v. *City of New York*, 2 App. Div. 2d 854, 155 N. Y. S. 2d 787; *Meistinsky* v. *City of New York*, 128 N. Y. S. 2d 483, reversed on other grounds, 285 App. Div. 1153, 140 N. Y. S. 2d 212, affirmed, 309 N. Y. 998, 132 N. E. 2d 900; 62 C. J. S., Municipal Corporations, § 575, p. 1111, 1962 Cum. pocket part, fn. 93.5; Restatement, Torts, § 25, pp. 160, 161. See also *United States* v. *Jasper*, *supra*.

In the present case Hamman, Berry and the chief of police were engaged in a common lawful undertaking to apprehend a felon. From their knowledge of the felon they recognized that their mission

was dangerous and, anticipating that there would be some shooting, were all armed for the occasion.

When the felon escaped after being fired upon, it was Berry's duty to pursue him and use whatever force was reasonably necessary to apprehend him. See *Hendricks* v. *Commonwealth*, 163 Va. 1102, 1108, 1109, 178 S. E. 8, 11.

When Hamman heard the shot from the rear of the house, he, without the knowledge of the chief of police who was with him on the front porch of the home, left a place of comparative safety and increased not only his peril but that of Berry's by venturing out into the open in the dark and fog at a time in the early morning hours when it was not reasonably anticipated that anyone other than the felon and Berry would be on the street or moving about.

The shooting of Hamman was unintentional and purely accidental. Berry was engaged in a lawful act while under great stress, and he shot Hamman under a reasonable belief that he was shooting at the escaping felon. It cannot be said by reasonable men that Berry did not act as a reasonably prudent person would have acted under all the circumstances and conditions then existing.

Moreover, Hamman assumed the risk of the injury incurred. When one who fully appreciates the hazards of an undertaking voluntarily exposes himself to a known danger he assumes the risk of resulting injury, and the party causing the injury is relieved of legal liability even though he may be negligent. *Davis* v. *Sykes*, 202 Va. 952, 954, 121 S. E. 2d 513, 514; 65 C. J. S., Negligence, § 174, pp. 848-854; 38 Am. Jur., Negligence, §§ 171, 173, pp. 845-848.

For the reasons stated the judgment of the lower court is set aside and final judgment is entered in favor of the defendant, Berry.

*Reversed and final judgment.*