ELEANOR E. SOMERS, administratrix, *vs.* ROGER G. OSTERHELD & another.

Hampden.    September 20, 1956. — November 21, 1956.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*State Hospital.  Negligence,* State hospital.  *Death.   Public Officer.*

Negligence on the part of the superintendent of a State hospital causing the death of a child patient was not shown by a declaration alleging in substance that the superintendent, being responsible for the care, training and safety of the child, caused him to be placed in an unenclosed, unsupervised outdoor recreation area, although he was physically and mentally unable to care for himself, pursuant to a method of training which was designed by the superintendent to make the child "more independent and self reliant" but which was "poorly conceived," "inadequately implemented," and "executed without proper provisions" for his safety, and that he disappeared from the recreation area on a cold rainy day and became lost and died. [27–28]

The superintendent of a State hospital in the discharge of his duties as a public officer would not be liable for conscious suffering of a patient preceding death in the absence of active misfeasance by the superintendent personally or by someone under his personal direction. [28]

Allegations in the declaration in an action for conscious suffering and death of a child patient of a State hospital against a defendant who, "under the direction of the superintendent" of the hospital, was "in charge of" the patient on a day when he disappeared from an unenclosed, unsupervised outdoor recreation area, became lost and died, failed to show negligence on the part of the defendant or to state a cause of action. [28]

ToRT. Writ in the Superior Court dated January 11, 1956.

The action was heard by *Dewing, J.,* on demurrers.

*Richard S. Milstein,* for the plaintiff.

*Samuel W. Gaffer,* Assistant Attorney General, for the defendants.

WILKINS, C.J. The plaintiff, the administratrix of the estate of her minor son, Roger, appeals from orders sustaining the demurrers of each defendant to the two counts of the declaration respectively pertaining to each of them. G. L. (Ter. Ed.) c. 231, § 96. Each count alleges that Roger, eight years of age, had been a patient in Monson State Hospital since 1950. On March 24, 1955, he was placed out of doors, and disappeared. Weeks later he was found dead.

Counts 1 and 2 are brought against the defendant Osterheld, who is alleged to be the superintendent of Monson State Hospital. Counts 3 and 4 are brought against the defendant Bernice Vennert, whose precise position is not clear, but who is alleged to have been in charge of Roger "under the direction of" the defendant Osterheld. Counts 1 and 3 are for death. G. L. (Ter. Ed.) c. 229, § 2C, inserted by St. 1949, c. 427, § 3, as amended by St. 1951, c. 250. Counts 2 and 4 are for conscious suffering.

The defendant Osterheld, as superintendent of Monson State Hospital (G. L. [Ter. Ed.] c. 123, § 25, as amended; § 28, as appearing in St. 1954, c. 598, § 3), is a public officer. *Attorney General* v. *Tillinghast,* 203 Mass. 539, 543–545. A public officer is not liable for any omission to perform his statutory duties or for the misfeasance of his servants or

agents under the doctrine of respondeat superior; but he may be subject to liability for a tort of active misfeasance committed in the discharge of his ministerial duties as such officer. *Trum* v. *Paxton,* 329 Mass. 434, 438–439, and cases cited.

In considering count 1 this anomalous doctrine is unimportant. In actions under the death statute the measure of liability is ordinary negligence irrespective of the test of common law liability. *Bergeron* v. *Forest,* 233 Mass. 392, 398–399 (liability of landlord to tenant for gratuitous repairs). *Shapiro* v. *Lyon,* 254 Mass. 110, 115, and *Gallup* v. *Lazott,* 271 Mass. 406, 408 (liability of host to guest). *Oliveria* v. *Oliveria,* 305 Mass. 297, 300–301 (liability of minor child to parent).

The question, therefore, is whether count 1 sufficiently states a cause of action based upon negligence. We summarize allegations of this count which are not hereinbefore enumerated. The defendant Osterheld, as superintendent in charge of the hospital and the patients, "was responsible for the care, training and safety of the plaintiff's intestate," and "had instituted various methods of caring for the plaintiff's intestate and others there located." Following admission as a patient, Roger was treated by this defendant in the Hodskins Building in which he was kept under observation in an area surrounded by a fence and where his ingress and egress were controlled. Thereafter by direction of this defendant "the plaintiff's intestate was treated in a building without restraint and was allowed access to a recreation area which was unenclosed" known as the children's colony. While in the children's colony Roger showed a tendency to climb fire escapes and structures and to separate himself from his fellow patients, a tendency which was made known to this defendant. At the plaintiff's request Roger was "returned" to the Hodskins Building for a time, but later "as a means allegedly designed to make the plaintiff's intestate more independent and self reliant" he was "returned" by this defendant to "the children's colony where no restraint was placed upon him or upon

others, and he was permitted to come and go and run about without surveillance and without the presence of attendants known or unknown, nor was any provision made therefor by the defendant Osterheld although the plaintiff's intestate's condition, both physical and mental, was such that he was unable to care for himself . . . . [T]he method of training and handling of the plaintiff's intestate as devised and put into operation by the defendant Osterheld was poorly conceived, inadequately implemented and executed without proper provisions being made for the safety of the plaintiff's intestate and other patients being treated with him, and with no precautions in effect to ascertain the plaintiff's intestate's whereabouts or activities, and because of the inadequacy of these training techniques conceived and made operative by the defendant Osterheld the plaintiff's intestate was placed out of doors on a cold rainy March day . . . under a system thus negligently promulgated by the defendant Osterheld which failed to provide for adequate observation of or protection for the plaintiff's intestate and others . . . and . . . due to the failure and incompleteness of the method instituted by the defendant Osterheld for the care of the plaintiff's intestate, and improperly and negligently executed by him, the plaintiff's intestate disappeared and was lost and unaccounted for and died . . . . [H]is decomposed remains were not discovered until on or about May 15, 1955, all as a result of the misconduct and misfeasance of the defendant Osterheld."

As we interpret count 1 as a whole, its substance is that the defendant Osterheld as superintendent in the exercise of the discretion conferred upon him by statute established a method or policy not approved by the plaintiff which accorded Roger a greater freedom of movement and action than he should have had and as a result led to his disappearance and death. For this there would be no liability to the plaintiff. *Benjamin* v. *Wheeler*, 8 Gray, 409, 413. *Denniston* v. *Clark*, 125 Mass. 216, 219. *Barry* v. *Smith*, 191 Mass. 78, 88. *Jaffarian* v. *Murphy*, 280 Mass. 402,

405. Prosser, Torts (2d ed.) page 781. It is not a case of personal custody in this defendant who, while in active personal charge of his ward, negligently allowed him to escape. It may be noted that the plaintiff's brief describes the counts against the defendant Osterheld as based upon "misfeasance and misconduct," whereas it describes the counts against the defendant Vennert as based upon "negligence, misconduct and misfeasance." We think that the demurrer was rightly sustained as to count 1.

Count 2 contains substantially the same allegations as count 1 and is brought for conscious suffering. The test here is not ordinary negligence but active misfeasance, and is an a fortiori case. The demurrer was rightly sustained as to count 2.

Counts 3 and 4 do not contain allegations which make the defendant Vennert a public officer. At most they show that she was an agent. The fact that one is an agent does not necessarily preclude his liability for torts. Restatement: Agency, § 343, comment a; § 350, comment a.

The question under counts 3 and 4 is whether each alleges a cause of action based upon negligence. We are of opinion that they do not. Most allegations are substantial repetitions of the language of counts 1 and 2. The allegation that the defendant Vennert "under the direction of the superintendent . . . was in charge of the plaintiff's intestate on March 24, 1955," followed by substantially the same lengthy allegations as to instituting methods of training and care, "a system . . . negligently promulgated," and "the failure and incompleteness of the method carried out by the defendant" and "improperly and negligently executed by her," falls short of adding anything substantial to the allegations in counts 1 and 2. The demurrer was rightly sustained as to counts 3 and 4.

*Orders sustaining demurrers affirmed.*